## 1100

SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent v. The FATHER AND MOTHER, Appellants. In the Interest of The CHILD (DATE OF BIRTH: 02-22-72, AGE: 14 YEARS) a child under the age of eighteen (18) years.

(366 S. E. (2d) 40)

Court of Appeals

*William J. Barnes,* Greenville, *for appellants.*

*Edward M. Sauvain,* Greenville, *for respondent.*

*David M. Yokel,* Greenville, *Guardian Ad Litem, for the minor child.*

Heard Dec. 9, 1987.

Decided Feb. 29, 1988.

SANDERS, Chief Judge:

This is a child abuse and neglect case. The mother and father of a minor child appeal from an order of the Family Court finding they abused and neglected their child. This is a sad story. The names of the mother and father, as well as the name of the child, have been omitted because we have no wish to cause this family further pain.[1]

The mother and father are parents of five children. The mother has a master's degree and is employed as a teacher and counselor at a public high school. The father is also a college graduate and is employed as a quality control en-

---

[1] *Doe v. Doe,* 286 S. C. 507, 334 S. E. (2d) 829 (Ct. App. 1985) (Family Court case in which the true names of the parties were omitted from the opinion of the Court).

gineer by a large, multinational corporation. In their family, he presides. ("He is the head of the household," the mother said.)

The child is a girl, thirteen years old at the time of the incident. She does not always obey her parents or tell them the truth. She went to a party at the home of a friend and lied about where she had been. Her parents felt the need to discipline her more effectively. So, the father took off his belt and beat his little girl black and blue. He also hit her in the face with his hand. She testified her ears "were ringing for about a day." The mother looked on, with approval. ("[A]t the moment that is what was needed," she said.)

Color photographs taken of the child show large purple bruises covering almost the entire back of her left thigh and a part of the back of her right leg, extending to her right knee. She suffered these injuries despite the fact she was wearing pants made of heavy material at the time. Witnesses described her injuries as being more severe than shown by the photographs which were taken five days after the incident. They also described a bruise on her right temple, not shown by the photographs.

The incident was reported to the Department of Social Services, a state agency charged with the responsibility of investigating child abuse and neglect.[2] After conducting an investigation, the Department brought this action in the Family Court. A guardian ad litem was appointed. The Court found the father had abused the child and the mother had neglected her by failing to intervene or report the incident.

The father argues his conduct does not amount to child abuse under the applicable statute[3] and, even if it does, the statute is unconstitutional because it denies his right to religious liberty. Predictably, the mother does not make any argument independent of the father. Instead, she argues she

---

[2] The record does not reveal who reported the incident to the Department of Social Services. Certain persons, including school teachers and counselors, are required to report child abuse. *See* S. C. Code Ann. § 20-7-510 (1976). Teachers and a counselor at the school attended by the child testified they observed her injuries following the incident.

[3] S. C. Code § 20-7-490 (1976, as amended).

is not guilty of neglecting the child because the father is not guilty of abusing her.

The statute applicable in this case provides, among ██ other things, that an abused child is a child whose physical health is harmed by the act of a parent and that harm can occur when the parent inflicts physical injury upon the child as a result of excessive corporal punishment.[4] A physical injury is, among other things, an impairment of any bodily organ.[5] According to undisputed testimony of a medical doctor, the skin is an organ. The skin of the child in this case was impaired.[6] The incident was no accident. The father testified: "That's what was called for at the moment, and that's what was dealt out." He characterized only one aspect of the incident as accidental: he claimed he did not realize he had on his college ring when he hit his daughter in the face. Corporal punishment is excessive when injuries such as those suffered by the child in this case are intentionally inflicted.

Excluded from the definition of child abuse is corporal punishment which meets certain guidelines.[7] The father argues his conduct meets these guidelines. It is unnecessary for us to address his arguments as to each of the guidelines because his conduct clearly does not meet at least one of them. Among the guidelines provided is the requirement that the force or violence of the discipline must be reason-

---

[4] *Id.* (B), (C)(1).

[5] S. C. Code § 20-7-490(F) (1976).

[6] The trial judge did not explicitly find the skin of the child was impaired. However, we can make our own findings in this case. *See South Carolina Dep't of Social Services v. Forrester*, 282 S. C. 512, 515, 320 S. E. (2d) 39, 41-42 (Ct. App. 1984) ("On appeal from an order of the family court [in a child abuse case], this court has the jurisdiction to review the entire record to determine the facts in accordance with its view of the preponderance of the evidence."). Moreover, we can affirm on any ground appearing in the record. Rule 4, § 8, Rules of Practice in the Supreme Court and Court of Appeals of South Carolina. An exception challenges the finding of the trial judge that the father had administered the same corporal punishment in the past, not only to the child "but [also] to other minor children residing in the home." We do not address this exception because the finding is unnecessary to the result which we reach. *See McCall v. Finley*, 362 S. C. 1, 4, 362 S. E. (2d) 26, 28 (1987) ("[W]hatever doesn't make any difference, doesn't matter."). Several other exceptions challenging findings of the trial judge are not addressed for the same reason.

[7] S. C. Code § 20-7-490(C)(1)(a), (b), (c), (d), (e) (1976, as amended).

able in manner and moderate in degree.[8] The force used by the father in this case was not moderate in degree. The doctor testified the injuries shown by the pictures "would have involved a great deal of force to inflict this much damage to the skin." Furthermore, the force used by the father was not reasonable in manner, particularly when he hit his daughter in the face.

A clergyman, called by the father to testify, invoked the Bible as the ultimate binding authority. The mother testified similarly. They cited Proverbs: "Withhold not correction from the child; for if thou beatest him with the rod, he shall not die."[9] (Neither, however, subscribed to the more severe punishment commanded for a rebellious child by Deuteronomy: "[S]tone him with stones, that he die."[10])

The mother and father may know the Bible, but they misunderstand the Bill of Rights. The first ten amendments to the Constitution of the United States comprise the Bill of Rights.[11] The First Amendment provides that Congress shall make no law prohibiting the free exercise of religion. The South Carolina Constitution contains an identical provision applicable to the General Assembly.[12] The guarantees of religious liberty contained in the two Constitutions have been treated as coextensive.[13] Of course, the religious liberty guaranteed by the First Amendment is equally protected from interference by the State.[14]

Shortly after ratification of the First Amendment, Thomas Jefferson said:

> Believing with you that religion is a matter which lies solely between man and his God; that he owes account to none other for his faith or his worship; that the legislative powers of the Government reach actions only, and not opinions, I contemplate with sovereign

---

[8] S. C. Code § 20-7-490(C)(1)(e) (1976, as amended).

[9] *Proverbs* 23:13-14.

[10] *Deuteronomy* 21:18-21.

[11] J. Lieberman, *The Enduring Constitution* (1987).

[12] S. C. Const. art. I, § 2.

[13] *See Hunt v. McNair*, 258 S. C. 97, 187 S. E. (2d) 645 (1972), *aff'd*, 413 U. S. 734, 93 S. Ct. 2868, 37 L. Ed. (2d) 923 (1973).

[14] *Cantwell v. Connecticut*, 310 U. S. 296, 60 S. Ct. 900, 84 L. Ed. 1213 (1940).

reverence that act of the whole American people which declared that their Legislature should "make no law respecting an establishment of religion or prohibiting the free exercise thereof," thus building a wall of separation between Church and State.[15]

Almost a hundred years later, Chief Justice Waite, writing for the United States Supreme Court, used the words of Thomas Jefferson as a basis to knock the hard edge off the guarantee of religious liberty: "Congress was deprived of all legislative power over mere opinion, but was left free to reach actions which were in violation of social duties or subversive of good order."[16] In other words, the First Amendment embraces two concepts: the freedom to believe and the freedom to act. The first is absolute, but the second is not.[17] The law cannot regulate what people believe, but the law can regulate how people act, even if how they act is based on what they believe. If the law were otherwise, a Fundamental Mormon could have multiple wives,[18] a Jehovah's Witness could withhold medical care from his child[19] and a modern-day adherent to an early eastern religion could drown a virgin bride to appease a river god.[20] Indeed, if the law were otherwise, the father in this case could beat his daughter into submission. Decisions of the United States

---

[15] 8 *The Writings of Thomas Jefferson* 113 (H. A. Washington ed. 1854) (a reply to a committee of the Danbury Baptist Association).

[16] *Reynolds v. United States,* 8 Otto 145, 98 U. S. 145, 25 L. Ed. 244 (1878).

[17] *Cantwell,* 310 U. S. 296, 60 S. Ct. 900, 84 L. Ed. 1213.

[18] *See Cleveland v. United States,* 329 U. S. 14 67 S. Ct. 13, 91 L. Ed. 12 (1946) (a Fundamentalist Mormon cannot practice polygamy).

[19] *See Prince v. Commonwealth of Massachusetts,* 321 U. S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1944) (a Jehovah's Witness cannot deny his child a vaccination required by law).

[20] *Reynolds,* 8 Otto 145, 98 U. S. 145, 25 L. Ed. 244 (dictum: the practice of human sacrifice is not protected under the First Amendment).

[21] *See Prince,* 321 U. S. at 166, 64 S. Ct. at 442 ("[T]he family itself is not beyond regulation in the public interest, as against a claim of religious liberty.").

[22] The father further argues the application of the statute "amounts to an unreasonable invasion of privacy." We cannot consider this issue because it was not raised before the trial judge. *See Patterson v. Goldsmith,* 292 S. ᴄ. 619, 626, 358 S. E. (2d) 163, 167 (Ct. App. 1987) ("An issue which was not raised below cannot be considered on appeal."). The father also appears to argue the statute is unconstitutional due to "vagueness and uncertainty." This is an issue properly raised under the Fourteenth Amendment, not the First Amendment. *See, e.g., Guinyard v. State,* 260 S. C. 220, 226, 195 S. E.

Supreme Court have denied constitutional protection to the former practices. By our decision in this case, we deny constitutional protection to the latter. The statute in question does not purport to regulate what the father believes. Rather, it regulates his actions. Child abuse is obviously "subversive of good order."[21] Thus, the statute is constitutional.[22]

The remedy approved by the trial judge in this case is minimal. He did not require the removal of the child from the home of her parents but, instead, merely required them to participate in a counseling program, monitored by the Department and the guardian ad litem. This remedy was well within his authority.[23] We believe the mother and father love their daughter and, despite what has happened, we believe she loves them. We also believe the mother and father can, if they will, learn to express their love in better ways, and the child can, if she will, learn to obey her parents—a requirement, coincidentally, of both the Bible[24] and the law.[25]

For all these reasons, the order of the Family Court is

Affirmed.

GARDNER and GOOLSBY, JJ., concur.

---

(2d) 392, 394 (1973) (quoting *State v. Albert,* 257 S. C. 131, 134, 184 S. E. (2d) 605, 606 (1971)) ("The concept of vagueness or indefiniteness rests on the constitutional principle that precedural due process requires fair notice and proper standards for adjudication."). No such issue was raised by any exception. *See Boulware v. Mills,* 294 S. C. 24, 26, 362 S. E. (2d) 184, 184 (Ct. App. 1987) ("An issue not raised by an exception will not be considered on appeal."). Moreover, no such issue was raised before the trial judge. *See Patterson,* 292 S. C. 619, 358 S. E. (2d) 163.

[23] *See* S. C. Code Ann. § 20-7-762 (1976) ("[U]pon a finding that the child shall remain in the home and that protective services shall continue, the Family Court shall review and approve a treatment plan designed to alleviate any danger to the child and to aid the parents so that the child will not be endangered in the future.) An exception challenges the aspect of the order requiring "the counseling to be had with professional counsel[ors], not church counsel[ors]." However, this exception was not argued on appeal. *See Henderson v. Gould, Inc.,* 288 S. C. 261, 267, 341 S. E. (2d) 806, 810 (Ct. App. 1986) ("Exceptions not argued are deemed abandoned.").

[24] *See Ephesians* 6:1 ("Children, obey your parents in the Lord: for this is right.").

[25] *See* S. C. Code Ann. § 20-7-400(A)(1)(c) (1976) (the Family Court has jurisdiction of a child less than seventeen years old "[w]ho is beyond the control of his parent").