23843

SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent v. Kitty Oree SMITH, Eddie Dean Smith, Chrissy Smith (DOB: 9/16/85), and Louise Smith (DOB: 11/27/87), of whom Kitty Oree Smith and Eddie Dean Smith are Appellants.

(429 S.E. (2d) 807)

Supreme Court

*Perry D. Boulier,* of *Holcombe, Bomar, Cothran and Gunn, P.A.,* Spartanburg, *for appellants.*

*Warren A. Kohn,* Columbia, *for respondent.*

Heard March 10, 1993.

Decided April 19, 1993.

CHANDLER, Associate Justice:

Kitty and Eddie Smith have two daughters, Chrissy, born September 16, 1985, and Louise, born November 27, 1987.

Both Parents suffer from mild mental retardation.

In August of 1990, the children were removed from Parent's home after allegations that Chrissy had been sexually abused by an aunt and uncle. The charges against the aunt and uncle were subsequently dismissed.

However, DSS sought to retain physical and legal custody of the children on the basis of Parents' neglect in failing to seek medical attention for Chrissy when the allegations of abuse arose.

In an Order of October 10, 1990, Family Court awarded DSS custody of the children, holding that due to Parents' mental retardation, DSS was not required to institute a treatment plan for rehabilitation.

In June 1991, DSS commenced an action against Parents for termination of parental rights pursuant to S.C. Code Ann. § 20-7-1572(6), which provides:

> The Family Court may order the termination of parental rights upon a finding of one or more of the following grounds:
>
>     *   *   *   *   *   *
>
> (6) The parent has a diagnosable condition unlikely to change within a reasonable time such as alcohol or drug addiction, mental deficiency, mental illness, or extreme physical incapacity, and the condition makes the parent unlikely to provide minimally acceptable care of the child.

After a hearing, Family Court terminated parental rights. This appeal follows.

## ISSUE

Is there clear and convincing evidence sufficient to terminate parental rights pursuant to S.C. Code Ann. § 20-7-572(6)?

## DISCUSSION

It is well established that grounds for termination of parental rights must be shown by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *S.C.D.S.S. v. Martell*, 279 S.C. 289, 307 S.E. (2d) 601 (1983). This Court may review the record of the Family Court to determine whether termination is supported by such evidence. *Martell, supra, S.C.D.S.S. v.*

*Humphreys,* 297 S.C. 118, 374 S.E. (2d) 922 (Ct. App. 1988).

In termination proceedings brought pursuant to § 20-7-1572(6), there must be clear and convincing evidence that : (1) the parent has a diagnosed mental deficiency, and (2) the deficiency makes it unlikely that the parent will be able to provide minimally acceptable care of the child. *Humphreys, supra; Orangeburg County DSS v. Harley,* 302 S.C. 64, 393 S.E. (2d) 597 (Ct. App. 1990). There is no requirement that the agency removing the child provide rehabilitative services to mentally incompetent parents prior to seeking termination, unlike in cases with competent parents. *Id.*

DSS offered the following evidence to support termination:

> 1. Testimony of Luther Diehl, a clinical psychologist, who examined Parents and determined that both have mild mental retardation that will not change. According to Dr. Diehl, Mrs. Smith's ability to function in a parental role was poor and unlikely to improve. Dr. Diehl made the same findings relative to Mr. Smith. Dr. Diehl's evaluation was reached after interviewing each Parent for one and one-half hours. He made no home visits, nor did he consider Parents' relationship with the children.
> 2. Testimony of Kim Roseborough, a DSS social worker. She testified that, due to the Smiths' mental retardation, no treatment or rehabilitation plan was proposed. She further testified that DSS had attempted to provide the Smiths with instruction on homemaking skills in the past. However, the homemaker instructors were not trained to teach mentally retarded people.
> 3. Testimony of the Guardian ad Litem who supported termination of parental rights.

Parents offered testimony of Bill Chidester, assistant to the Executive Director of the Charles Lea Center, a treatment and education facility for mentally retarded people.[1] He testified in detail concerning the Center's recently instituted program for the education of the mentally retarded in parenting skills, family planing, and sexuality. Parents have been accepted into the program.

---

[1] Dr. Diehl, in his testimony, acknowledged the pre-eminence of the Charles Lea Center in the area for treatment of mentally retarded persons.

Further, Dr. Diehl, upon cross-examination, testified that Parents could benefit from such a program and should be given the opportunity to do so:

> Q. Well let me ask you back to my question I started a minute ago. If you were aware that Charles Lea had started a program specifically designed to help mentally retarded parents with their parenting skills, to enhance their parenting skills and help them in general in that area, and if that program would have a considerable degree of supervision, a lot of follow-up, would you defer to Charles Lea's opinion as to whether or not these parents could be helped?
>
> A. I would consider a referral for evaluation. That would not alter my statements about prognosis.
>
> Q. You would consider a referral?
>
> A. Or to allow them to assist if these individuals were appropriate for the program they were offering.
>
> Q. And if these individuals were appropriate, would you feel that based on Charles Lea's opinion, they ought to be given a chance in that program?
>
> A. If there were a program that were available, and they felt they could help them.
>
> \* \* \* \* \* \*
>
> Q. And do you feel like these folks if there is anything reasonable out there, they ought to be given that opportunity, shouldn't they?
>
> A. That would be my usual approach to this type of situation, yes, sir.

In her testimony, Kim Roseborough agreed with Dr. Diehl: "I would not disagree if there was a program available that would help either Mr. or Mrs. Smith, that they should be referred to it at this time."

Given the testimony of Dr. Diehl, Kim Roseborough, and the administrators of the Charles Lea Center, we hold that DSS has failed to establish, by clear and convincing evidence, that the statutory requirements for termination of parental rights pursuant to § 20-7-1572 (6) have been met. The case here is distinguishable from *Humphreys* and *Harley, supra.*

The Order terminating parental rights is reversed and the

case remanded to Family Court. Termination shall be reconsidered, *de novo*, following Parents' participation in the Charles Lea program for a period not to exceed one year from the date of Parents' acceptance into the program. We express no opinion as to the final determination in this matter. Pending that determination, children shall remain in the custody of DSS.

Reversed and remanded.

HARWELL, C.J., and FINNEY, TOAL and MOORE, JJ., concur.