518 S.E.2d 51

Karen JOINER As Guardian Ad Litem For
Robert Alex RIVAS, Respondent,

v.

Delores RIVAS, Appellant,

and

South Carolina Department of Social Services,
Lexington County, Defendant.

In the Interest of Robert Alex Rivas DOB: 11–26–93 Minor
child under the age of eighteen (18) years.

No. 2990.

Court of Appeals of South Carolina.

Heard Jan. 14, 1999.

Decided May 10, 1999.

Rehearing Denied Aug. 7, 1999.

Certiorari Granted Nov. 5, 1999.

David S. Hipp, of Dooley, Spence, Parker & Hipp; and Patrick J. Frawley, of Nicholson, Davis, Frawley, Anderson & Ayer, both of Lexington, for appellant.

Jeffrey A. Jacobs and Simpson Z. Fant, both of Nelson, Mullins, Riley & Scarborough, of Columbia, for respondent.

HEARN, Judge:

Delores Rivas, the mother, appeals from a family court order terminating her parental rights to her son, Robert Alex Rivas, based on findings that: (1) the child was removed from the mother's home pursuant to South Carolina Code section 20–7–736 (Supp.1998), and remained outside the home for more than six months, and the mother failed to remedy the conditions which caused the removal; and (2) the mother suffers from a diagnosable condition unlikely to change within a reasonable period of time. We vacate and remand.

## FACTUAL/PROCEDURAL BACKGROUND

The facts of this case are largely undisputed. The mother has a history of mental illness that is controllable by medication. In 1993, the year Alex was born, the Department of Social Services (DSS) initiated a case against the mother. Prior to that time and continuing thereafter, the Lexington County Department of Mental Health was providing the mother with mental health services and medication.

On December 29, 1994, DSS received a report from law enforcement that the mother's home was in disarray. A DSS caseworker visited the home on January 6, 1995, found that it was in poor condition, and requested that it be cleaned. A follow-up visit on January 19, 1995, found no change. At that point, DSS assumed custody of Alex and the mother's other children based on a determination that the children were in danger of physical harm. That same day, the family court awarded emergency protective custody of Alex to DSS. Shortly thereafter, on January 23, 1995, the court appointed Karen Joiner, a volunteer with the South Carolina Guardian ad Litem program, as Alex's guardian ad litem.

After a merits hearing, the family court found Alex was physically neglected and continued DSS's custody of him. DSS implemented a treatment plan for the mother based on her mental health problems. On August 23, 1995, during the course of her treatment plan, the mother tested positive for cocaine and marijuana. DSS then implemented a new treatment plan that focused on the mother's drug abuse as well as her mental health problems. At a judicial review in December of 1995, the court found that Alex continued to be threatened with physical harm unless the mother successfully completed the treatment plan. The court ordered the mother to receive drug counseling and to refrain from drug use.

On January 8, 1996, DSS referred the mother to the Lancaster Recovery Center for out-patient evaluation. There, the mother reported a ten year history of drug and alcohol use, and revealed she had used crack cocaine daily during 1995 and had last used the drug on January 8, 1996.

Based on their assessment, Lancaster Recovery recommended the mother enter Springs Memorial Hospital for three weeks of treatment. The mother complied, and upon her release, Lancaster Recovery referred her to the Lexington–Richland Alcohol and Drug Abuse Council (LRADAC) for continuing out-patient treatment.

The mother began attending the LRADAC program in March of 1996. Shortly thereafter, DSS allowed her unsupervised visitation with Alex. Once the unsupervised visits began, the mother stopped regularly attending LRADAC. On April 9, 1996, the mother called her DSS caseworker to report

she had relapsed and used cocaine on April 8, 1996. Sixteen days later, on April 24, 1996, DSS returned Alex to the mother.[1]

On June 10, 1996, after the mother had failed to pick up Alex from his grandmother's and again had tested positive for cocaine, DSS filed a complaint seeking an *ex parte* removal order. The family court again determined Alex was in imminent danger of harm and awarded emergency protective custody to DSS. The court again appointed Karen Joiner as the child's guardian ad litem. The next day, the mother entered a new program known as the Dual Diagnosis Day Treatment Program. This program was designed to assist those diagnosed with both mental illness and chemical dependency.

On June 28, 1996, Karen Joiner, in her capacity as guardian ad litem, commenced the instant action seeking termination of the mother's parental rights to Alex. The mother answered and counterclaimed, alleging: (1) she was pursuing a regular course of treatment for both her mental illness and her drug addiction, (2) she had adhered to DSS's treatment plan, (3) she had remained drug free since Alex was removed from her custody on June 10, and (4) she expected her mental health and drug addiction to improve significantly in the near future such that she would, within a reasonable time, be able to resume custody of Alex and provide him with adequate food, clothing, shelter, education, health, and protection.

After a merits hearing on September 24, 1996, the family court issued its order terminating the mother's parental rights. The court found that Alex had been removed from the mother's home pursuant to South Carolina Code section 20–7–736, Alex had been out of the home for a period exceeding six months, and despite reasonable and meaningful efforts by DSS to offer appropriate rehabilitative services, the mother had not remedied the conditions that caused Alex's removal.[2]

---

1. It is undisputed that proper procedure was not followed in this case and that Alex was returned to the mother against DSS policy.

2. While noting the mother's illegal drug use had not been the original cause for Alex's removal, the court found Alex was not returned to the home after the mother's mental condition stabilized because of the ensuing drug use. Accordingly, the court found, for purposes of section 20–7–1572(2), Alex was "removed" because of the mother's use of

Thus, the court found termination was proper under South Carolina Code section 20-7-1572(2) (Supp.1998).

The family court further found that the mother suffered from the diagnosable conditions of mental illness and drug addiction, and although her mental condition appeared to be under control, her expected recovery from this double problem was "far from guaranteed." In view of the mother's past failed rehabilitative efforts, the court found the mother's condition was unlikely to change within a reasonable time. Accordingly, the court found termination also proper under Code section 20-7-1572(6). Finally, the court held—given the age of the child, the length of time the child was separated from the mother, the mother's lack of response to earlier treatment, and the uncertainty of success of future treatment—the best interests of Alex would be served by terminating the mother's parental rights.

The mother's Rule 59(e), SCRCP, motion seeking reconsideration of the order was denied. This appeal followed.

## LAW/ANALYSIS

On appeal, the mother asserts the family court erred in failing to appoint an independent guardian ad litem for Alex in the termination proceedings. We agree.

■ Actions for termination of parental rights are creatures of statute. Statutes providing for termination of parental rights must be strictly construed in favor of preserving the relationship of parent and child. *Leone v. Dilullo,* 294 S.C. 410, 413, 365 S.E.2d 39, 40 (Ct.App.1988) (citing *Goff v. Benedict,* 252 S.C. 83, 86–87, 165 S.E.2d 269, 271 (1969)); *Wilson v. Higgins,* 294 S.C. 300, 304, 363 S.E.2d 911, 913–14 (Ct.App.1987). South Carolina's statutory scheme for termination of parental rights requires the appointment of a guardian ad litem for a child. S.C.Code § 20-7-1570(B) (Supp.1998) ("A child subject to any judicial proceeding under this subarti-

___

drugs, and her continuing use of drugs despite treatment efforts was sufficient to terminate her parental rights.

cle must be appointed a guardian ad litem by the family court.").

■ Although Ms. Joiner was appointed as guardian ad litem for Alex in the initial DSS abuse and neglect action, her role as a guardian was transformed when she filed this action to terminate the mother's parental rights.[3] As the plaintiff who had a stake in the outcome of the termination action, Ms. Joiner could not simultaneously serve as a guardian for Alex. Although we have no doubt that Ms. Joiner pursued this action because she believed it to be in Alex's best interest, she could not function as both an advocate for the termination of the mother's parental rights and as a guardian ad litem for Alex.

The family court and this court on appeal have a duty to guard zealously the rights of parties under legal disability. *See, e.g.,* Jean Hoefer Toal et al., *Appellate Practice in South Carolina* 69 (1999). Appellate courts have consistently exercised that duty, even where the issue was procedurally barred or not even raised. *See Ex parte Roper,* 254 S.C. 558, 563, 176 S.E.2d 175, 177 (1970) ("[W]here the rights and best interests of a minor child are concerned, the court may appropriately raise, *ex mero motu,* issues not raised by the parties." (emphasis added)); *Galloway v. Galloway,* 249 S.C. 157, 160, 153 S.E.2d 326, 327 (1967) ("The duty to protect the rights of minors has precedence over procedural rules otherwise limiting the scope of review and matters affecting the rights of minors can be considered by this court *Ex mero motu.*" (emphasis added)); *Caughman v. Caughman,* 247 S.C. 104, 109, 146 S.E.2d 93, 95 (1965) ("[T]he duty to protect the rights of incompetents has precedence over procedural rules otherwise limiting the scope of review."); *see also Prather v. Tupper,* 267 S.C. 636, 639–40, 230 S.E.2d 712, 713 (1976) (setting aside a determination of illegitimacy where no guardian ad litem was appointed to represent the infant).

---

**3.** Ms. Joiner's standing to pursue an action to terminate parental rights has not been challenged. *See In re Lyde,* 284 S.C. 419, 421–22, 327 S.E.2d 70, 71 (1985) (An action to terminate parental rights need not be initiated by DSS but may be brought by any interested party.); *Department of Social Servs. v. Pritchett,* 296 S.C. 517, 520, 374 S.E.2d 500, 501–02 (Ct.App.1988) (Foster parents have standing to bring a termination action.).

An action to sever permanently the parent-child relationship is one of the most serious actions entertained by the family court or by this court on appeal. *See Greenville County Dep't of Social Servs. v. Bowes,* 313 S.C. 188, 194, 437 S.E.2d 107, 110 (1993) ("This Court cannot sanction the precipitous termination of parental rights based on emotionally charged complaints not proved to the level of this objective standard."); *see also Santosky v. Kramer,* 455 U.S. 745, 747–48, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.").

■ South Carolina Code section 20-7-1570(B) mandates the appointment of a guardian ad litem for a child subject to a termination action; failure to do so divests the court of jurisdiction to render a judgment. *South Carolina Dep't of Social Servs. v. McDow,* 276 S.C. 509, 511, 280 S.E.2d 208, 209 (1981). Consequently, the order terminating the parental rights of the mother must be vacated, and the case must be remanded for the appointment of a guardian ad litem for Alex and a new termination hearing. *See South Carolina Dep't of Social Servs. v. Vanderhorst,* 287 S.C. 554, 558, 340 S.E.2d 149, 151–52 (1986) (Where the record did not show the family court complied with the requirement to appoint counsel for an indigent parent in a termination of parental rights action, the case was remanded to the family court.); *McDow,* 276 S.C. at 511, 280 S.E.2d at 209 ("As no guardian ad litem was appointed to represent [the father], we must vacate the order terminating his parental rights and remand the case for the appointment of a guardian ad litem and a new termination hearing.").

## CONCLUSION

■ Although the issue of appointment of a guardian ad litem was not raised to the trial judge, we nevertheless hold that preservation of error rules should be relaxed because the rights of a minor are involved. The failure to appoint a guardian ad litem in a termination of parental rights action is

such a fundamental error that a new trial is required.[4] Accordingly, the decision of the family court is

**VACATED AND REMANDED.**

CONNOR, J., concurs.

HUFF, J., dissents in a separate opinion.

HUFF, Judge, dissenting:

## I.

On appeal, the mother argues that clear and convincing evidence does not support termination of her parental rights pursuant to S.C.Code Ann. § 20–7–1572(2) because Alex had not lived outside her home for a period of six consecutive months immediately proceeding the termination. Because this issue was neither raised to nor ruled upon by the trial court, it may not be considered on appeal. *See South Carolina Department of Social Services v. Father and Mother,* 294 S.C. 518, 366 S.E.2d 40 (Ct.App.1988) (issue which was not raised below cannot be considered on appeal); *Wilder Corporation v. Wilke,* 330 S.C. 71, 497 S.E.2d 731 (1998) (issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review).

## II.

The mother also asserts the family court erred in determining she had not remedied the conditions which caused Alex's removal pursuant to § 20–7–1572(2). I disagree.

S.C.Code Ann. § 20–7–1572(2) (1985) provided at the time of the hearing that the family court may order termination of parental rights where:

The child has been removed from the parent pursuant to § 20–7–736, has been out of the home for a period of six months, and despite a reasonable and meaningful effort by the agency to offer appropriate rehabilitative services, the

---

4. We agree with the dissent's resolution of the other exceptions raised by Appellant. However, based on our disposition of this issue, we have not reached the merits of those arguments.

parent has not remedied the conditions which caused the removal.

It is well established that grounds for termination of parental rights must be proved by clear and convincing evidence. *Richland County Department of Social Services v. Earles,* 330 S.C. 24, 496 S.E.2d 864 (1998). In reviewing a termination of parental rights, this court has authority to review the record and make our own findings of whether clear and convincing evidence supports the termination. *Id.*

The mother would have this court hold that she has "remedied" her drug addiction problem because she has "been drug-free since June 8, 1996." Although the record shows a short period of progress by the mother in her latest treatment, the mother has a history of relapses and failure to follow through with treatment. It is undisputed the mother tested positive for cocaine in April, May, and June of 1996, while she was undergoing drug rehabilitation treatment. The record further reveals the mother has a history of failing to follow through with treatment programs, as evidenced by her failure to attend LRADAC sessions when Alex was returned to her, and her failure to follow through with the Lancaster Recovery intensive step program after the May 1996 positive drug test. I find clear and convincing evidence the mother has not remedied the conditions which caused removal.

## III.

Next, the mother asserts the family court erred in finding clear and convincing evidence that termination of her parental rights was appropriate under § 20-7-1572(6). Specifically, she argues the evidence shows there has already been a change in her "diagnosable condition." I disagree.

S.C.Code Ann. § 20-7-1572(6) (1985) provides in part that the family court may order termination of parental rights upon a finding that:

> The parent has a diagnosable condition unlikely to change within a reasonable time such as alcohol or drug addiction ... and the condition makes the parent unlikely to provide minimally acceptable care for the child.

In determining the mother's drug addiction was unlikely to change within a reasonable time, the family court considered the testimony of Penny Thorne, a certified addictions counselor with the dual diagnosis program. Thorne testified the program was designed to move along carefully and slowly so as to avoid a setback. Because the program was new, no one had yet completed it, but she anticipated client participation in the program to be from six to nine months. The mother started the program in June 1996 and therefore would not be expected to complete the program until sometime between December of 1996 and March of 1997. Further, Thorne admitted that even if the mother successfully completed the program, there was no guarantee she would, at that time, be able to provide proper parental care for Alex. Thorne also admitted that the projected success rate of the dual diagnosis program was far less than 30%. In addition to Thorne's testimony, the family court considered evidence of the mothers's failure to respond to previous drug rehabilitation efforts. I agree with the family court that these considerations, together with Alex's young age and the level of care and responsibility commensurate with providing care for a young child, constitute clear and convincing evidence that the mother's drug addiction is unlikely to change within a reasonable amount of time such that she can be expected to provide the child with minimally acceptable care.

## IV.

The mother next asserts this court should reverse and vacate the termination order because the family court refused to allow her sufficient time to complete the dual diagnosis program in which she was enrolled at the time of trial. In support of this contention, the mother directs this court's attention to the holding in *South Carolina Department of Social Services v. Smith,* 311 S.C. 426, 429 S.E.2d 807 (1993).

In *Smith,* the family court terminated the parental rights of two mildly retarded parents pursuant to § 20–7–1572(6). The Supreme Court reversed, holding that clear and convincing evidence did not support termination of parental rights under § 20–7–1572(6) where (1) the parents had been accepted into a program designed to educate mentally retarded persons in parenting skills, family planning, and sexuality, and (2) DSS's

own witness, a clinical psychologist, testified the parents could benefit from the program and should be given the opportunity to do so.

The facts of this case are clearly distinguishable from those before the Court in *Smith*. In *Smith*, due to the parents' mental retardation, no treatment plan or rehabilitation plan was proposed by DSS. In the instant case, however, the mother had already been offered and participated in drug rehabilitative services and had established a history of relapsing into drug use despite treatment. Moreover, the potential benefit of the dual diagnosis program is questionable given the low projected rate of success as established at trial. Finally, the *Smith* court established a "reasonable time" limit of no more than one year from the date the parents were accepted into the program, for the family court to reconsider termination of parental rights. Here, after learning of the mother's positive drug test in August 1995, DSS implemented a new treatment plan, which included treatment for drug and alcohol problems. Thus, the mother had already been in drug rehabilitation treatment for approximately one year at the time of the September 1996 trial of this case. My reading of *Smith* does not convince me that the Supreme Court intended that every parent facing termination of parental rights pursuant to § 20-7-1572(6), regardless of that parent's treatment history, be granted time to complete every treatment program the parent enters. Such a reading would lead to absurd results. Indeed, a parent could avoid termination indefinitely by simply enrolling in one treatment program after another.

## V.

Finally, the mother asserts the family court erred in failing to appoint an independent guardian ad litem for Alex in the termination proceedings. As with the first issue, this argument is made for the first time on appeal. It was neither raised to nor ruled upon by the trial court and therefore is not preserved for our review. *See South Carolina Department of Social Services v. Father and Mother*, 294 S.C. 518, 366 S.E.2d 40 (Ct.App.1988) (issue which was not raised below cannot be considered on appeal); *Wilder Corporation v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998) (issue cannot be raised for the first time on appeal, but must have been raised

to and ruled upon by the trial judge to be preserved for appellate review).

Accordingly, I would affirm the order of the family court.