THIS OPINION HAS NO
 PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY
 PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 Department of
 Social Services, Respondent,
 
 
 
 
 

v.

 
 
 
 Sherri D.,
 Robert D., Sherry D., Larry B., and Betty B., Defendants,
 
 Of Whom Robert
 D. is Appellant.
 
 In the
 Interests of: C.D., M.D., and L.D., all minor children under the age of 18.
 
 
 
 
 

Appeal From Anderson County
Tommy B. Edwards, Family Court Judge

Unpublished Opinion No.   2010-UP-178
 Heard February 2, 2010 -  Filed March 1,
2010

AFFIRMED

 
 
 
 William Norman Epps, III, of Anderson, for
 Appellant.
 M.J. Goodwin, of Anderson, for Respondent.
 Hugh W. Welborn, of Anderson, Guardian Ad
 Litem.
 
 
 

PER CURIAM: Robert D. (Father) appeals the family court's order finding (1) he abused
 and/or neglected his three minor children, C.D., M.D., and L.D. (collectively
 Children), pursuant to section 63-7-20 of the South Carolina Code (2008); (2)
 he used excessive corporal punishment on C.D.; and (3) the Department of Social
 Services (DSS) made reasonable efforts to prevent or eliminate the need for
 removal.  We affirm.   
FACTS
DSS first became involved in
 this case on March 30, 2007, when allegations arose that Father excessively
 bruised C.D.'s buttocks as a result of a spanking.  Thereafter, Children were
 taken into emergency protective custody and DSS placed Children with Helping
 Hands.  After a probable cause hearing, the family court issued an order
 instructing DSS to retain custody of Children.    
On June 25, 2007, July 11,
 2007, and July 25, 2007, the family court conducted a merits hearing.  At the
 hearing, Angela Holtzclaw, C.D.'s school nurse, testified that when C.D. came
 to school on March 30, 2007, C.D. complained she was unable to sit.  According
 to Holtzclaw, C.D. told her she could not sit down because "her daddy had
 given her a really bad spanking."  When Holtzclaw asked if this had
 happened before, C.D. responded, "yes, but it had been a while." 
 Holtzclaw then requested Assistant Principal Valerie Anna Neal's presence when
 she examined C.D.  The school librarian then took pictures of the bruises on
 C.D.'s buttocks and Neal contacted DSS and law enforcement.  
Holtzclaw opined C.D.'s
 bruises were not the result of "a bad spanking," but rather "a
 beating."  According to Neal, once DSS arrived, C.D. "was trembling. 
 And I asked her why she was trembling, and she said she was afraid to go home .
 . . because my dad is going to kill me if I go home today."  Neal
 testified "it was obvious that [C.D.] had been hurt terribly by a parent. 
 And I can't say she told me that, but I know that this occurred." 
 According to Neal, C.D.'s buttocks were "purple and black and blue, [and] C.D.
 was in terrible pain and could not sit."  According to Neal, C.D.
 expressed concern over M.D.'s safety.  
When DSS employee Susan
 Leverette arrived at the school, C.D. told her the bruises were the result of a
 spanking.  According to Leverette, M.D. was relieved when he learned he was not
 going home.  Leverette testified Father denied bruising C.D.; however, he later
 admitted he spanked C.D.  Leverette acknowledged both Father and C.D. stated C.D.
 had been in a bike accident the previous day, but Leverette did not believe the
 bruising was consistent with a bike accident.  Rather, Leverette believed C.D.'s
 bruises were the result of excessive corporal punishment and, as a result, DSS
 sought a finding that Father physically abused C.D.  Additionally, Charie
 Jenkins, a child protective services investigator, believed C.D.'s bruises were
 the result of excessive corporal punishment.  
Brent Simpson of the Anderson
 County Sheriff's Department decided to place Children into emergency protective
 custody based on C.D.'s statements and bruises.  Simpson believed M.D. and L.D.
 were also in danger.  
Father admitted he spanked
 Children as a form of discipline; however, he did not believe a spanking caused
 C.D.'s bruises.  According to Father, on March 29, 2007, C.D. and a friend were
 riding bikes and C.D. had an accident.  That same evening, Father spoke to C.D.
 about deceiving him regarding permission to have a friend over.  Based on her
 deception, Father spanked C.D.  According to Father, he gave C.D. "three
 licks with a paddle."   Father opined "there is no way I put them
 bruises on her, and if by any chance I caused any of those bruises I'm
 sorry."  
On March 1, 2008, the family
 court issued a removal order transferring custody of Children to DSS.  Specifically,
 the family court found (1) Father abused and/or neglected Children pursuant to
 section 63-7-20 of the South Carolina Code (2008); (2) Father used excessive
 corporal punishment on C.D.; and (3) DSS made reasonable efforts to prevent or
 eliminate the need for removal.  Father filed a Rule 59(e), SCRCP, motion,
 which the family court denied.  This appeal followed.  
STANDARD OF REVIEW
In appeals from the family
 court, this court may find facts in accordance with its own view of the
 preponderance of the evidence.  Nasser-Moghaddassi v. Moghaddassi, 364
 S.C. 182, 189-90, 612 S.E.2d 707, 711 (Ct. App. 2005); see also Florence
 County Dep't of Soc. Servs. v. Ward,  310 S.C. 69, 71, 425 S.E.2d 61,
 62 (Ct. App. 1992) ("When physical abuse of a child is alleged, this
 [c]ourt is free to find facts based on its own view of the preponderance of
 evidence.").  However, this broad scope of review does not require us to
 disregard the family court's findings.  Bowers v.
 Bowers, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct. App. 2002).  Nor must we
 ignore the fact that the family court, which saw and heard the witnesses, was
 in a better position to evaluate their credibility and assign comparative
 weight to their testimony. Cherry v. Thomasson, 276 S.C. 524, 526, 280
 S.E.2d 541, 542 (1981).  
LAW/ANALYSIS
I.  Excessive
 Corporal Punishment
Father contends the family
 court erred in finding Father used excessive corporal punishment on C.D. and as
 a result erred in removing C.D. from Father's custody.  We disagree.  
Child abuse
 occurs when a parent "inflicts or allows to be inflicted upon the child
 physical . . . injury . . . sustained as result of excessive corporal
 punishment."  S.C. Code Ann. § 63-7-20(4)(a)
 (2008).  However, physical discipline is not corporal punishment if it (1) is administered by a parent; (2) is perpetrated
 for the sole purpose of restraining or correcting the child; (3) is reasonable
 in manner and moderate in degree; (4) has not brought about permanent or
 lasting damage to the child; and (5) is not reckless or grossly negligent
 behavior by the parents.  § 63-7-20(4)(a)(i)-(v).  
Evidence presented at the
 merits hearing indicated Father's use of physical discipline was not reasonable
 in manner or moderate in degree.   Neal, Holtzclaw, Leverette, Jenkins, and
 Simpkins all testified the bruising on C.D.'s buttocks was excessive. 
 Additionally, C.D. informed school personnel she was unable to sit because of
 the spanking.  Further, the photographs entered into evidence revealed numerous
 and significant bruises, and the bruises were inconsistent with bruising from
 the bike accident.  Accordingly, we find the evidence supports the family
 court's conclusion Father used excessive corporal punishment on C.D.[1]  
II.  Failure
 to Return M.D. and L.D.
Father argues the family
 court erred in failing to return M.D. and L.D. to Father's custody.  We
 disagree.  
In cases involving excessive
 corporal punishment, if one child is taken into emergency protective custody and
 the only injury to the child is "external lesions or minor bruises,"
 other children in the home shall not be taken into emergency protective custody. 
 S.C. Code Ann. § 63-7-620(A)(1) (2008). 
 However, this statute only prohibits law enforcement from removing other
 children in a home if the bruises on one child are minor.  Based on the evidence
 presented to the family court, C.D.'s bruises were not minor.   Rather,
 evidence indicated C.D. had numerous and significant bruises.  Accordingly, we
 find the family court did not err in concluding M.D. and L.D. should not be
 returned to Father's custody.   
III.  Efforts
 to Prevent or Eliminate Removal
Father contends the family
 court erred in finding DSS made reasonable efforts to prevent or eliminate the
 need for removal of Children.  We disagree.
When a family court removes a
 child, the family court's order "shall contain a finding by the court of
 whether reasonable efforts were made by [DSS] to prevent removal of the child
 and a finding of whether continuation of the child in the home would be
 contrary to the welfare of the child."  S.C. Code Ann. § 63-7-1660(G)
 (2008).  When DSS's first contact with a child occurs "under such
 circumstances that reasonable services would not have allowed the child to
 remain safely in the home, the court shall find that removal of the child without
 services or without further services was reasonable."  S.C. Code Ann. § 63-7-1660(G)(4) (2008).    
DSS's first contact with Children
 occurred when C.D. told school personnel Father spanked her.  Based upon the
 severity of the bruising and C.D.'s statements, law enforcement took Children
 into emergency protective custody because law enforcement did not believe
 Children could remain safely in the home. Because probable cause existed to
 place Children in emergency protective custody, the family court did not err in
 concluding Children could not remain safely in the home.[2]  
CONCLUSION
Based on the foregoing, we
 find the family court did not err in finding (1) Father abused and/or neglected
 Children pursuant to section 63-7-20 of the South Carolina Code (2008); (2) Father
 used excessive corporal punishment on C.D.; and (3) DSS made reasonable efforts
 to prevent or eliminate the need for removal.  Accordingly, the family court
 order is 
AFFIRMED.
WILLIAMS, KONDUROS,
 JJ., and CURETON, A.J., concur.  

[1] Because Father's conduct did not meet the third
 guideline of section 63-7-20(4), we need not address the remaining guidelines.  See S.C. Dep't of Soc. Servs. v. Father and Mother, 294 S.C. 518,
 521, 366 S.E.2d 40, 42 (Ct. App. 1988) (holding this court does not need
 to address a parent's argument as to each of the guidelines when the conduct clearly
 does not meet at least one of them).
[2] Father also argues the family court erred in refusing
 to admonish DSS; however, based on the facts of this case, we decline to
 address this issue.