1077

Joseph C. LEONE and Ellen Marie Leone, Respondents v. Marie Horton DILULLO, George Fortier and Christine Ann Horton and Patrick Joseph Horton, minors, by their Guardian ad Litem, of whom Marie Horton Dilullo is Appellant.

(365 S. E. (2d) 39)

Court of Appeals

*Kathryn Williams,* of *Foster, Covington & Patrick,* Greenville, *for appellant.*

*William T. Clarke,* of *Legal Clinic of Sarratt & Clarke,* Greenville, *for respondents.*

Heard Oct. 21, 1987.

Decided Jan. 25, 1988.

BELL, Judge:

This is an action for termination of parental rights and adoption. Joseph Leone and his wife, Ellen, desired to adopt Christine Ann Horton and Patrick Joseph Horton, the natural children of Joseph's sister, Marie Horton Dilullo, by George Fortier. The Leones were awarded legal custody of Christine and Patrick more than three years prior to the commencement of this action. The Leones petitioned the family court to terminate the parental rights of Dilullo and Fortier and to grant the Leones a decree of adoption. Dilullo counter-claimed for return of custody of the children. The family court terminated parental rights on the grounds that the children had lived outside the homes of both natural parents for six months and that during that time both parents failed to visit the children or support them. The court then denied Dilullo's counterclaim for custody and entered a decree of adoption in favor of the Leones. Dilullo appeals. We affirm.

The facts of the case are largely undisputed. Dilullo is the natural mother of Christine and Patrick Horton. She was never married to the children's natural father, George Fortier. From birth until they were four and half and three years of age, respectively, the children lived with Dilullo in Waterbury, Connecticut. In May 1980, Dilullo was evicted from her dwelling for nonpayment of rent after she was robbed of her rent money. Shortly thereafter, she lost her

job and went on welfare. Unable to support the children, and concerned that they were too young to be placed in state custody, Dilullo asked the Leones to take care of them until she was in a position to provide for them herself. The Leones agreed and brought Christine and Patrick to Greenville, South Carolina, to live with them and their four children. Christine and Patrick have lived with the Leones continuously since May 1980. They have a normal, healthy sibling relationship with the Leone children and call the Leones "mom" and "dad."

In December 1981, the Leones obtained an order from the Greenville County family court granting them legal custody of Christine and Patrick. Since the award of custody, Fortier, who still resides in Waterbury, Connecticut, has had no contact with the children and has provided them no support. Dilullo likewise has provided no support. Although she did send a dress to Christine in December 1984, she has never sent Patrick anything. Since surrendering the children in May 1980, Dilullo has never visited them. She has never mailed a card or a letter to them. She did make a few intermittent telephone calls over the years. She testified that during the six months next preceding this action, she telephoned one time, to wish Patrick a happy birthday.

Section 20-7-1572, Code of Laws of South Carolina, 1976, as amended, provides in pertinent part:

> The Family Court may order termination of parental rights upon a finding of one or more of the following grounds:
>
>       \*   \*   \*
>
> (3) The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to visit the child.

Dilullo admits that Christine and Patrick have lived outside her home for a period of six months and during that time she has failed to visit them. However, she argues her failure to visit was not "willful," but a result of her poor financial circumstances. She claims she has done everything reasonably within her means to maintain a parental rela-

tionship with the children since she surrendered them to her brother and his wife.

Statutes providing for the termination of parental rights are to be strictly construed in favor of the parent and the preservation of the relationship of parent and child. *Goff v. Benedict*, 252 S. C. 83, 165 S. E. 269 (1969). Whether a failure to visit is "willful" within the meaning of the statute is a question of intent to be determined in each case from all the facts and circumstances. *Berry v. Ianuario*, 286 S. C. 522, 335 S. E. (2d) 250 (Ct. App. 1985). In making this determination, the trial judge is given wide discretion. *Bevis v. Bevis*, 254 S. C. 345, 175 S. E. (2d) 398 (1970). However, the element of willfulness must be established by clear and convincing evidence. *Richberg v. Dawson*, 278 S. C. 356, 296 S. E. (2d) 338 (1982).

Conduct of the parent which evinces a settled purpose to forgo parental duties may fairly be characterized as "willful," because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent. *Hamby v. Hamby*, 264 S. C. 614, 216 S. E. (2d) 536 (1975); *State ex rel. Medlock v. Nest Egg Society Today, Inc.*, 290 S. C. 124, 348 S. E. (2d) 381 (Ct. App. 1986) (conduct committed with a deliberate intention under such circumstances that an ordinary person would be conscious of it as a violation of another's rights is "willful"). On the other hand, an act or course of conduct by a parent which is done through force of circumstances or from dire necessity is not "willful." *Hamby v. Hamby, supra.* Among the circumstances to be considered on the issue of willfulness, the statute identifies (1) distance of the child's placement from the parent's home and (2) whether the parent was prevented from visiting the child by the party having custody or by a court order. Code Section 20-7-1572(3).

We find sufficient evidence of wilfulness in this case to sustain the judge's ruling. Dilullo's poor financial circumstances may partially explain her failure to visit the children even once in five years. Connecticut is a considerable distance from South Carolina. But the record reveals more than a failure to travel to South Carolina. It evidences a pattern of almost total indifference to the two

children after they were given to the Leones. Dilullo never wrote the children. She seldom telephoned. She never attempted to provide even nominal amounts of money to help with the children's support. Although she says Fortier paid child support while Christine and Patrick were in her custody, Dilullo apparently made no attempt to have him send money to the Leones for the children. By her own admission, she never requested visitation or custody of the Leones until they petitioned to adopt the children. Although she was aware the legal aid agency in Connecticut could help her obtain support for and custody of her children, she did not seek their services. In summary, Dilullo's conduct over a period of five years provides clear and convincing evidence of a settled purpose to forgo her parental relationship with Christine and Patrick.

The trial judge, who commented in his order on Dilullo's poor demeanor as a witness, was apparently not satisfied that her near total neglect of the children could be explained away by force of circumstances. After reviewing Dilullo's testimony, we, like the trial judge, find her explanations implausible. For example, she admitted the Leones had not discouraged her from calling the children, claiming she failed to call only because she had no money to pay for it and she did not have a telephone. Yet she also admitted that during the two years she was married to Mr. Dilullo (i.e., 1983-84) she had financial support and a telephone. She gave no explanation for her failure to write the children. She simply failed to overcome the Leones' clear and convincing proof that her abandonment of the children was willful.

In view of our decision on the termination of Dilullo's parental rights, we need not address the additional issues of custody, visitation, and termination of Fortier's parental rights, raised in Dilullo's brief. However, we wish to commend Dilullo's counsel for the fine representation she has given her client. Her vigorous, thorough, and candid argument on behalf of a court appointed client are in the best tradition of the legal profession.

Affirmed.

SHAW and CURETON, JJ., concur.