516 S.E.2d 463

**SC DEPARTMENT OF SOCIAL SERVICES, Respondent,**

v.

**Sheila LAIL, Appellant.**

**No. 2975.**

Court of Appeals of South Carolina.

Heard March 11, 1999.

Decided April 19, 1999.

285

James W. Boyd, of Rock Hill, for appellant.

Michael G. Matthews, of Rock Hill, for respondent.

Guardian ad Litem: Michael H. Lifsey.

PER CURIAM:

Sheila Lail appeals from an order of the family court terminating her parental rights to her two minor children, eleven-year-old twin girls, April and Amber. We reverse.

### Facts/Procedural History

Sheila Lail (the mother) and Keith Lail (the father) are the parents of four children: the twins, a son, Scott, who was seventeen at the time of the hearing, and another emancipated daughter, Christina. On July 21, 1992, the South Carolina Department of Social Services (DSS) received a report alleging the father had sexually abused Christina, who was sixteen at the time. The report also alleged all four of the children were being neglected. A caseworker was assigned to investigate the allegations. When the caseworker visited the home, it was messy and contained little food. Shortly thereafter, the DSS caseworker again went to the Lail residence and found the parties had moved, leaving behind Christina, who was staying with a friend at the time. The Lails were subsequently arrested and jailed in Michigan on charges of abandonment, and DSS took April, Amber, and Scott into protective custody. The Lails were incarcerated in Michigan for two months and were extradited to South Carolina where they remained incarcerated for a month and a half. The criminal charges of abandonment were ultimately dismissed.

The family court held a merits hearing on November 11, 1992. On March 9, 1993, the court issued its order finding the allegations of sexual abuse against the father unfounded. The

order did not address the issues of abandonment or physical neglect and failed to set forth a treatment plan. However, the court found the children should remain in DSS custody because both parents were still incarcerated at the time. Upon DSS's motion, the court issued an amended order on April 11, 1993, finding that: (1) the DSS caseworker observed the home to be filthy and to contain little food but that the evidence did not constitute physical neglect; (2) the sexual abuse allegations against the father were unfounded; and, (3) the parties had abandoned Christina. The court adhered to its previous finding that the children were to remain in DSS custody and ordered visitation for the parents.[1] Further, the court ordered the mother and father to complete counseling "as recommended by [DSS]" and to undergo substance abuse evaluations.

Pursuant to the court's order, DSS established a twelve month treatment plan for the mother and father. The Lails, however, refused to cooperate with the DSS caseworker when she attempted to explain the plan and refused to sign the plan. As well, the mother and father were disruptive during their visits with the children. Specifically, the father repeatedly accused DSS personnel of "dragging their feet" in returning the minor children to their care. The mother and father failed to complete the first treatment plan.

DSS established a second treatment plan in August of 1993. This plan required the parents to continue counseling, to undergo substance abuse evaluations, and to maintain visitation with the children. The plan also included a request that the mother and father undergo psychological evaluations.

The mother and father were again uncooperative during the explanation and signing of the plan. However, the parties underwent the recommended psychological evaluation. The evaluating physician recommended the children not be returned to the parents at that time and that parenting skills and family therapy be incorporated into a treatment plan. According to DSS, the mother and father never successfully

---

1. The record on appeal does not contain the transcript of this hearing; thus, we do not know whether the Lail's attorney moved that the children be allowed to return home. Apparently, no appeal was taken from this order.

dealt with their resentment of Christina. Further, the parties failed to complete the substance abuse counseling incident to the second treatment plan.

During the course of the second treatment plan, the parties' son, Scott, ran away from the foster care facility. A DSS caseworker discovered the mother and father were harboring the child. The parties were ruled into court and held in contempt.

According to DSS, the mother continued being uncooperative through three additional treatment plans. Specifically, the mother repeatedly failed to complete recommended counseling and parenting skills classes. The mother also failed to visit the children from late November of 1994 until May of 1995.[2] DSS had no contact with the father after May of 1995.

According to the mother, it is DSS that has been uncooperative. She cites her attempts to comply with DSS-ordered counseling. DSS ordered the Lails to attend counseling at the Saluda Center and initially agreed to pay for the counseling. The Lails attended for five months until December 2, 1994. At that time, DSS declined to pay. The mother, who felt uncomfortable with DSS's counselor, sought a different therapist. Since August of 1995 she has attended regular counseling at the Carolina Counseling Center in Rock Hill. The mother had been seeing her current therapist for a year at the time of trial. Although this therapist describes the mother's progress as "excellent," DSS maintains that the mother has not completed family therapy. However, all the mother's written requests for visits with her children for the express purpose of family therapy with her current therapist have been denied. Similarly, although the mother completed a DSS-recommended parenting class, DSS indicated it did not address all its concerns for her parenting skills.

In March of 1996, DSS filed a complaint seeking termination of the parties' parental rights to April and Amber. The complaint alleged the parties had failed to support the children and had failed to remedy the circumstances causing the

2. We note that this time period coincides with the disagreement between the parents and DSS over who should pay for DSS-ordered counseling, the parent's marital break-up, and the father's subsequent disappearance from this case.

children's removal. The mother answered, denying her parental rights should be terminated, and counterclaimed, seeking to have Amber and April returned to her custody.

On May 3, 1996, the family court issued an order which, *inter alia*, transferred jurisdiction of Scott Lail to York County DSS,[3] required DSS to establish a six-month treatment plan for the mother, required the mother to complete family counseling at her own expense, and directed the mother to pay child support for April and Amber.

On January 16, 1997, the family court issued another order removing Christina from the case, finding April and Amber should remain in DSS custody, relieving DSS of any further obligation to provide the mother with treatment plans, and terminating the mother's visitation rights with the twins.

The family court held the merits hearing on DSS's termination of parental rights action on August 14, 1997. By order dated September 5, 1997, the family court terminated the parental rights of both the mother and father to April and Amber.[4] As to the mother, the court found the children had been out of the mother's home for more than six months during which time the mother failed to support the children. The court also found the mother had failed to rehabilitate or remedy the conditions which caused the removal. Specifically, the family court found the mother failed to comply with various court orders and four separate DSS treatment plans by failing to complete counseling, failing to undergo substance abuse evaluations, and failing to complete parenting skills programs. The court further found that the mother's belated efforts to comply with the rehabilitative programs were judi-

---

3. Scott had repeatedly run away from his foster care placements, each time seeking refuge with the mother. As a direct consequence of this pattern, DSS recommended Scott be returned to his mother's custody and supervised by York County DSS. In March of 1997, the York County caseworker wrote to the Chester County DSS requesting to be relieved of providing services that were no longer necessary. Chester County never responded.

4. The father defaulted in the termination action and is not a party to this appeal. At trial, the mother testified she and the father were no longer married.

cially motivated and thus not indicative that the conditions causing removal had been cured.[5]

## Standard of Review

■■■■ Grounds for termination of parental rights must be proved by clear and convincing evidence. *Greenville County Dep't of Social Servs. v. Bowes,* 313 S.C. 188, 193, 437 S.E.2d 107, 110 (1993); *South Carolina Dep't of Social Servs. v. Broome,* 307 S.C. 48, 52, 413 S.E.2d 835, 838 (1992) ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." quoting *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)); *South Carolina Dep't of Social Servs. v. Brown,* 317 S.C. 332, 337, 454 S.E.2d 335, 338 (Ct.App.1995). On appeal of a termination of parental rights case, this court may review the record and make its own finding of whether clear and convincing evidence supports the termination. *South Carolina Dep't of Social Servs. v. Humphreys,* 297 S.C. 118, 121, 374 S.E.2d 922, 924 (Ct.App.1988). Statutes providing for the termination of parental rights must be strictly construed in favor of the parent and the preservation of the parent-child relationship. *Leone v. Dilullo,* 294 S.C. 410, 413, 365 S.E.2d 39, 40 (Ct.App.1988); *Wilson v. Higgins,* 294 S.C. 300, 304, 363 S.E.2d 911, 913–14 (Ct.App. 1987); *see, e.g., Goff v. Benedict,* 252 S.C. 83, 86–87, 165 S.E.2d 269, 271 (1969) (strictly construing adoption statutes).

## Discussion

■■■■ The mother argues on appeal that the family court erred in terminating her parental rights based on her willful failure to support the twins. We agree.

By order dated May 3, 1996, the mother was ordered to pay $20.60 per week in support for April and Amber. At trial, a DSS caseworker testified that since being ordered to pay support, the mother had not missed a payment. Prior to being formally requested to provide support for the girls, the

---

**5.** At the time of trial, the mother had maintained steady employment for over one year. She had obtained a GED and completed a parenting course. She lived in a three bedroom house that was described by her pastor and caseworker as clean and in good order.

mother had sent $100.00 to DSS. The mother also testified that prior to being ordered by the court to pay support she had given spending money to the girls during visits.

The only finding contained in the order concerning the mother's payment of child support is this:

> The defendant minor children have lived outside the home of the defendant Sheila Lail for a period of at least six (6) months and defendant Sheila Lail failed to support the defendant minor children or make a material contribution to the children's case as provided for in S.C.Code Ann. § 20–7–1572(4) (Lawyer's Co-op, 1976), as amended.

In determining whether to terminate a parent's rights for failure to support, the court may consider *all* relevant circumstances in deciding whether a parent has willfully failed to support the child. S.C.Code § 20–7–1572(4) (Supp.1998); *see South Carolina Dep't of Social Servs. v. Broome*, 307 S.C. 48, 53, 413 S.E.2d 835, 839 (1992) (stating 'willful' means conduct that "manifests a conscious indifference to the rights of the child to receive support and consortium from the parent."). Although the request for support need not assume a particular form, "[b]efore parental rights may be severed, the willful failure to support after being requested to do so by the child's custodian must be established by clear and convincing evidence." *Boyer v. Boyer*, 291 S.C. 183, 186, 352 S.E.2d 514, 516 (Ct.App.1987).

Despite numerous court hearings and at least four treatment plans for the Lails, DSS inexplicably failed to request child support from the mother until the judicial review order dated May 3, 1996. The record before us contains no evidence that DSS ever formally requested child support from mother until that time. Although the mother testified that DSS had mentioned child support, DSS never told the mother a specific dollar amount despite her requesting one. The mother assumed that this gave her a choice, and she testified she chose to give money to the twins directly. Once the mother was formally ordered to pay a set amount of child support, she did so faithfully. *Cf. Broome*, 307 S.C. at 53, 413 S.E.2d at 839 (terminating mother's rights for failure to support despite the fact that the court had issued three formal support orders). She also paid at least $100 to DSS for support in advance of

being ordered to do so. Taking our view of the evidence, we do not believe that DSS established by clear and convincing evidence that the mother willfully failed to support the twins.

■ The mother also argues the family court erred in terminating her parental rights to her daughters based upon her failure to remedy the conditions that caused the removal because there was no finding that Amber and April were ever endangered by those conditions. We agree.

The mother's parental rights were terminated pursuant to South Carolina Code section 20–7–1572(2), which provides for termination of parental rights if "[t]he child has been removed from the parent pursuant to section 20–7–736, has been out of the home for a period of six months, and the parent has not remedied the conditions which caused the removal." S.C.Code Ann. § 20–7–1572(2) (1981 & Supp.1998).

Code section 20–7–736(E)(2), as it appeared at the time of the court's April 1993 order, provided for removal only upon a judicial finding that "[t]he child has been endangered as otherwise defined in § 20–7–490 and there is clear and convincing evidence that the child cannot be protected from further harm of the type justifying intervention without being removed." S.C.Code Ann. § 20–7–736(E) (1985).[6] Code section 20–7–490(B) provides that an endangered child is one "whose physical or mental health or welfare is harmed or threatened with harm, as defined by items (C) and (D) of this section, by the acts or omissions of his parent, guardian, or other person responsible for his welfare." S.C.Code Ann. § 20–7–490(B) (1981).[7] The harm referred to includes: sexual abuse, abandonment, and failure to supply adequate food, clothing, shelter, education, or health care. S.C.Code Ann. § 20–7–490(C)(2)–(4) (1981).[8]

---

6. Section 20–7–736(E)(2) was redesignated as section 20–7–736(F) and was amended to provide for a preponderance of the evidence standard by 1996 Act No. 450, section 8, effective January 1, 1997.

7. Section 20–7–490(B) was amended by 1993 Act No. 158, section 8, effective June 15, 1993, and later redesignated as section 20–7–490(2) by 1996 Act No. 450, section 3, effective January 1, 1997.

8. Section 20–7–490(C)(2)–(4) has been redesignated as section 20–7–490(3)(b)–(d) by 1996 Act No. 450 section 3, effective January 1, 1997.

Initially we note that because the mother never appealed from the April 1993 order, it is the law of the case. *Hooper v. Rockwell,* 334 S.C. 281, 513 S.E.2d 358 (1999) (holding any order issued as a result of a merit hearing, as well as any later order issued with regard to a treatment, placement, or permanent plan, is a final order that a party must timely appeal); *see also Chan v. Thompson,* 302 S.C. 285, 293, 395 S.E.2d 731, 736 (Ct.App.1990) (unappealed finding becomes the law of the case). Nevertheless, even though the mother is bound by the April 1993 order and the subsequent orders containing treatment plans, DSS still bears the burden of establishing, by clear and convincing evidence, that the mother has not remedied the reason for removal and that termination of her parental rights would be in the children's best interest.

The mother does not contest the family court's findings regarding her failure to comply fully with the various treatment plans. Rather, the crux of the mother's argument is that the April 1993 order provided no legal basis for DSS's retention of custody because the order held: (1) the sexual abuse charges unfounded, (2) there was no finding of neglect, (3) the parents were no longer incarcerated, and (4) the finding of abandonment concerned only Christina. Because no conditions ultimately justified the initial removal, there could be nothing for the mother to remedy. Consequently, terminating the mother's parental rights for failure to remedy those conditions is illogical. We agree.

April and Amber were initially removed from the Lails because there were allegations of sexual abuse involving Christina, the Lail home was messy, and the Lails had abandoned Christina. The charges of sexual abuse and physical neglect were unfounded, and the criminal charges of abandonment as to Christina were dismissed. Given that statutes providing for termination of parental rights must be strictly construed, we do not believe DSS established by clear and convincing evidence that the mother failed to remedy the conditions that caused the removal.

In order for DSS to successfully pursue a termination of parental rights action based upon a parent's failure to remedy the conditions that caused the children's removal, those reasons for removal must have been found to be viable.

Here, where the reasons for removal were not upheld by the family court in its amended merits order of April 11, 1993, the mother's failure to "remedy" those unfounded charges cannot serve as a basis for terminating her parental rights.

■ We fully appreciate DSS's and the family court's frustration with parents who fail to comply with treatment plans. However, failure to comply with DSS treatment plans is not one of the statutory grounds for termination of parental rights in this state. In *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Supreme Court noted:

> The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

A termination hearing, by its very nature, tends to pit the natural parent against the State in a "David versus Goliath" battle. The State has at its disposal "an array of public resources and has the power to shape the historical events that form the basis for termination." *Greenville County Dep't of Social Servs. v. Bowes*, 313 S.C. 188, 195, 437 S.E.2d 107, 111(1993) (reversing order terminating parental rights and finding DSS contributed to lack of bonding between mother and child when DSS had custody for the child's entire life, forcing the mother to "struggle through years of litigation fighting what must seem an overwhelming foe."). Thus, while the mother's efforts to comply fully with DSS treatment plans were less than whole-hearted, the mother's attitude toward DSS is understandable given the chain of events that precipitated the dissolution of the Lail family. Such an attitude, without more, does not mandate the solution sought by DSS in this case.

For the foregoing reasons, the decision of the family court is reversed, and this case is remanded to the family court to conduct a review of the propriety of the children's continued custody with DSS consistent with this opinion.

**REVERSED AND REMANDED.**

CONNOR, HEARN, and HUFF, JJ., concur.