**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Kendra Diane Cantrell and John Doe, Defendants,

Of whom Kendra Diane Cantrell is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2018-000187

———————————

Appeal From Spartanburg County
Phillip K. Sinclair, Family Court Judge

———————————

Unpublished Opinion No. 2018-UP-430
Submitted October 26, 2018 – Filed November 26, 2018

———————————

**REVERSED AND REMANDED**

———————————

Kenneth Philip Shabel, of Kennedy & Brannon, P.A., of Spartanburg, for Appellant.

Robert C. Rhoden, III and Kathryn J. Walsh, both of South Carolina Department of Social Services, of Spartanburg, for Respondent.

Jamia Diann Foster, of Law Office of Jamia D. Foster LLC, of Spartanburg, for the Guardian ad Litem.

_____

**PER CURIAM:**  Kendra Diane Cantrell (Mother) appeals the family court's order terminating her parental rights to her minor son (Child).  On appeal, Mother argues the Department of Social Services (DSS) did not prove (1) a statutory ground for termination of parental rights (TPR) or (2) TPR was in Child's best interest.  Because DSS did not prove a statutory ground for TPR by clear and convincing evidence, we reverse and remand for a new permanency planning hearing.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

In terminating Mother's parental rights, the family court found DSS proved the following three statutory grounds for TPR: (1) Mother failed to remedy the conditions causing removal, (2) it was not reasonably likely Mother's home could be made safe in twelve months due to the severity or repetition of the abuse or neglect, and (3) Mother willfully failed to support Child.  *See* S.C. Code Ann. § 63-7-2570 (Supp. 2017) (providing the family court may order TPR upon finding at least one statutory ground is satisfied and also finding TPR is in the child's best interest).  However, based on our review of the record, DSS did not prove any of these grounds by clear and convincing evidence.  *See Dep't of Soc. Servs. v. Mrs. H*, 346 S.C. 329, 333, 550 S.E.2d 898, 901 (Ct. App. 2001) (providing TPR grounds must be proved by clear and convincing evidence); *S.C. Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 455, 639 S.E.2d 165, 168 (Ct. App. 2006) ("Because terminating the legal relationship between natural parents and a child is one of the most difficult issues an appellate court has to decide, great caution must be exercised in reviewing [TPR] proceedings[,] and [TPR] is proper only when the evidence clearly and convincingly mandates such a result.").

First, DSS did not prove by clear and convincing evidence Mother failed to remedy the conditions causing removal.  *See* § 63-7-2570(2) (providing a statutory ground for TPR is met when "[t]he child has been removed from the parent . . . and has been out of the home for a period of six months following the adoption of a

placement plan by court order or by agreement between [DSS] and the parent[,] and the parent has not remedied the conditions which caused the removal"); *McCutcheon v. Charleston Cty. Dep't of Soc. Servs.*, 302 S.C. 338, 343, 396 S.E.2d 115, 118 (Ct. App. 1990) ("First, DSS must identify the condition that led to the removal of the child. Second, DSS must identify appropriate rehabilitative services, and third, DSS must make a meaningful offer of those services. DSS is not, however, responsible for insuring successful outcomes."); *id.* at 342, 396 S.E.2d at 117 ("[I]t is imperative that the condition which led to [the child's] removal be thoroughly explored.").

In finding this ground was met, the family court relied on Mother's prescription opioid use to find she had not overcome her substance abuse issue. However, DSS never identified Mother's prescription drug use as a condition that needed to be remedied. Taylor Martin, the DSS foster care worker, acknowledged the only basis for DSS's involvement in 2016 was Mother's positive test for marijuana, and she agreed neither Child's or his sister's[1] case "had anything to do with prescription medication abuse." In its removal complaint, DSS did not allege Mother was abusing prescription medication, and in its TPR complaint, DSS did not identify prescription drug use as a concern. Further, the placement plan did not identify prescription drug use as a concern. Because DSS never identified Mother's prescription drug use as an issue that needed to be remedied prior to the TPR hearing, her use of prescription medicine cannot serve as a basis to find she failed to remedy the conditions causing removal.[2] *See McCutcheon*, 302 S.C. at 343, 396 S.E.2d at 118 ("First, DSS must identify the condition that led to the removal of the child.").

---

[1] Mother was pregnant with Child when she tested positive for marijuana in February 2016, and DSS initially initiated an action concerning Child's sister. Child's sister is not a party to this proceeding.

[2] Although DSS correctly argues ancillary issues are relevant when determining a child's best interest or whether a child can safely be returned to a parent, a condition that is not identified by DSS cannot serve as the basis for finding this statutory ground is met. DSS must identify the condition that must be remedied and provide the parent a path to remedying that condition before it can serve as the basis to support this ground. *See McCutcheon*, 302 S.C. at 343, 396 S.E.2d at 118 ("First, DSS must identify the condition that led to the removal of the child. Second, DSS must identify appropriate rehabilitative services, and third, DSS must make a meaningful offer of those services.").

Regarding the condition DSS did identify—Mother's marijuana use—DSS did not present *any* evidence showing Mother failed to remedy that condition. Mother successfully completed substance abuse treatment between October 3, 2016, and December 14, 2016, and Martin acknowledged the treatment center regularly tested patients for drugs and Mother would not have successfully completed the program if she failed drug tests. Martin admitted the only positive drug test DSS had in this case was the February 2016 test. Finally, the November 27, 2017 hair follicle test to which Mother voluntarily submitted was negative for all drugs except amphetamine.[3] No evidence shows Mother's illegal drug use continued after the February 2016 positive drug test. Because the failed drug test was the basis for the 2016 removal, DSS did not prove this ground by clear and convincing evidence.

Second, DSS did not prove by clear and convincing evidence Mother's home could not be made safe within twelve months due to the severity or repetition of the harm. *See* § 63-7-2570(1) (providing a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been harmed . . . , and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months"); S.C. Code Ann. § 63-7-20(6)(a) (Supp. 2017) ("'Child abuse or neglect' or 'harm' occurs when the parent . . . engages in acts or omissions which present a substantial risk of physical or mental injury to the child . . . ."). Although a child in Mother's home was harmed by Mother's marijuana use, we cannot say by clear and convincing evidence it was not reasonably likely Mother's home could be made safe in twelve months.[4] We acknowledge Mother had four prior indicated cases: one in 2006 involving cocaine use, one in 2007 involving cocaine use, one in 2009 involving cocaine use, and one in 2012 involving alcohol use. However, Mother successfully completed treatment for cocaine addiction in 2010, and nothing indicates she used cocaine thereafter. Likewise, Mother stated she successfully completed treatment for alcohol abuse in 2012, and nothing indicates she abused alcohol after that time. Although it is problematic that Mother moved from one substance to another, nothing indicates Mother had a substance abuse issue the four years prior to her

_____

[3] Mother testified she was prescribed amphetamines for attention deficit hyperactive disorder.

[4] Although Mother contends evidence did not clearly and convincingly show *Child* was harmed, the plain language of the statute only requires harm to a child living with the parent. *See* § 63-7-2570(1) (providing a statutory ground for TPR is met when "[t]he child *or another child* while residing in the parent's domicile has been harmed . . . ." (emphasis added)). Thus, the first prong of this subsection is met.

positive drug test in February 2016.  Following the February 2016 positive drug test, Mother successfully completed treatment between October and December 2016, and nothing indicates Mother used marijuana in the twenty-one months between the February 2016 drug test and the November 2017 TPR hearing.  In fact, the *only* evidence submitted—Mother's successful completion of drug treatment in December 2016 and her November 2017 drug test—showed Mother did not have an ongoing substance abuse problem.  Thus, DSS did not present clear and convincing evidence showing it was not reasonably likely Mother's home could be made safe within twelve months.

Third, DSS did not prove by clear and convincing evidence Mother willfully failed to support Child.  *See* § 63-7-2570(4) (providing a statutory ground for TPR is met when "[t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child").  The family court ordered DSS to refer this case to child support enforcement in the March 20, 2017 merits removal order.  In that same order, the family court found Mother filed a financial declaration with the Clerk of Court on March 17, 2017.  Notwithstanding this, DSS never set child support for Mother.  Martin testified a prior caseworker referred the case to child support enforcement, but Martin never followed up on that referral.  Martin also admitted the DSS file did not contain a document verifying a referral was made.  Even more troubling was Mother's testimony that she asked the prior caseworker about paying child support and was told DSS was not "trying to have a [child support] hearing anymore because they were foregoing any reasonable efforts" at reunification.  We are concerned by DSS's failure to set child support, especially after being ordered to do so by the family court.  Although "nothing in [section 63-7-2570(4)] requires a parent be 'notified' of [her] duty to support or visit [her child] before failure to discharge those duties may serve as grounds for [TPR]," we decline to find Mother's failure to support was willful under these facts when DSS did not set support after being ordered to do so by the family court.[5]  *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 258, 519 S.E.2d 351, 356 (Ct. App. 1999); *see also* § 63-7-2570(4) ("The court may consider all relevant circumstances in determining whether or not the parent has willfully failed to support the child, *including requests for support by the custodian* and the ability of the parent to provide support." (emphasis added)).

---

[5] Although the family court found Mother was ordered to pay child support in May 2017 and began paying at that time, the evidence does not support a finding that Mother was ordered to pay support for *Child*.  Rather, Mother was ordered to provide support for Child's *sister* in the March 20, 2017 order, and Mother testified she regularly provided that support.

Further, when DSS failed to set support, Mother provided support at visitation such as diapers, clothes, and shoes. *See S.C. Dep't of Soc. Servs. v. Lail*, 335 S.C. 284, 286, 289-91, 516 S.E.2d 463, 464-66 (Ct. App. 1999) (finding the mother did not willfully fail to support her children when the record "contain[ed] no evidence that DSS ever formally requested child support from [the] mother until" nearly four years after the children were removed, the mother testified she gave money directly to the children before child support was set, and the mother paid support "faithfully" after it was set), *overruled on other grounds by Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 109 & n.8, 536 S.E.2d 372, 375 & n.8 (2000). Thus, this ground is not met by clear and convincing evidence.[6]

Based on the foregoing, we reverse and remand for a permanency planning hearing pursuant to section 63-7-1700 of the South Carolina Code (Supp. 2017). A permanency planning hearing will allow all parties and the guardian ad litem an opportunity to update the family court on what has occurred since the TPR hearing. We urge the family court to conduct a hearing as expeditiously as possible, including presentation of a new guardian ad litem report and an updated home evaluation of Mother's residence. If necessary, the family court may, inter alia, change custody, modify visitation, and approve a treatment plan offering additional services to Mother.

**REVERSED AND REMANDED.**[7]

**KONDUROS, MCDONALD, and HILL, JJ., concur.**

---

[6] Because DSS did not prove a statutory ground by clear and convincing evidence, we do not need to consider whether TPR is in Child's best interest. *See* § 63-7-2570 (providing the family court may order TPR upon finding at least one statutory ground is met and TPR is in the child's best interest).

[7] We decide this case without oral argument pursuant to Rule 215, SCACR.