**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Lukas Stasi and Brittney L. Stasi, Respondents,

v.

Mallory Sweigart, and Matthew Kidwell, Defendants,

Of whom Mallory Sweigart is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2018-002149

———————

Appeal From York County
Thomas Henry White, IV, Family Court Judge

———————

Unpublished Opinion No. 2019-UP-383
Submitted November 13, 2019 – Filed December 10, 2019

———————

**REVERSED IN PART, VACATED IN PART,
AND REMANDED**

———————

Stephen D. Schusterman, of Schusterman Law Firm, of
Rock Hill, for Appellant.

Thomas Franklin McDow, IV, and Erik K. Urquhart,
both of McDow and Urquhart, LLC, of Rock Hill; and
Barrett Wesley Martin, of Barrett W. Martin, P.A., of
Rock Hill, for Respondents.

April Dawn Porter, of Law Office of April D. Porter, P.C., of Chester, for the Guardian ad Litem.

_____

**PER CURIAM:** Mallory Sweigart (Mother) appeals an order terminating her parental rights to her minor daughter (Child) and granting Child's adoption by Lucas (Luke) and Brittney Stasi (collectively, Respondents). On appeal, Mother argues the family court erred in (1) finding FaceTime calls were supplemental rather than substitute visitation, (2) finding Mother willfully failed to visit Child, (3) placing Child's attachment to Respondents over that of Mother, and (4) finding the guardian ad litem (the GAL) was fair and impartial. We reverse in part, vacate in part, and remand.

Mother and Brittney are sisters. In December 2014, Child went to live with Respondents after Mother threatened suicide. Mother was diagnosed with borderline personality disorder, and she moved to Florida in January 2015 to attend a type of borderline personality disorder treatment called dialectical behavior therapy (DBT). Child remained with Respondents.

On January 14, 2015, Respondents filed a custody action. Following mediation, the parties agreed Respondents would have custody of Child, Mother would have supervised visitation one day per month at Respondents' home, and Mother would have weekly thirty-minute FaceTime phone calls. Mother agreed to submit to nail drug screens every six months and provide the results to Respondents, and "continue in weekly Borderline Personality Disorder therapy." The agreement provided visitation would be suspended if Mother tested positive for drugs or did not timely submit to a drug test, failed to regularly attend therapy, or was "involved in any critical event, such as a suicide attempt." The family court approved the agreement on October 15, 2015.

On April 20, 2017, Respondents filed this action for TPR and adoption asserting Mother's parental rights should be terminated based on willful failure to visit and support. On November 7, 2018, the family court issued an order terminating Mother's parental rights based on the ground of willful failure to visit. The family court further found TPR and adoption was in Childs' best interest and granted her adoption by Respondents. This appeal followed.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis*

*v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

The family court may order TPR upon finding a statutory ground for TPR is met and TPR is in the child's best interest. S.C. Code Ann. § 63-7-2570 (Supp. 2019). The grounds for TPR must be proved by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999). A statutory ground for TPR exists when "[t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to visit the child." S.C. Code Ann. § 63-7-2570(3). "Whether a parent's failure to visit or support a child is wilful is a question of intent to be determined by the facts and circumstances of each case." *S.C. Dep't of Soc. Servs. v. Wilson*, 344 S.C. 332, 336, 543 S.E.2d 580, 582 (Ct. App. 2001). "Conduct of the parent which evinces a settled purpose to forego parental duties may fairly be characterized as 'willful' because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." *S.C. Dep't of Soc. Servs. v. Broome*, 307 S.C. 48, 53, 413 S.E.2d 835, 839 (1992).

Although Mother's in-person visitation was sporadic prior to September of 2017, Respondents did not prove by clear and convincing evidence that her failure to visit was willful. When Child was placed in Respondents' custody, Mother had a significant mental health illness and attended DBT in Florida. *See* § 63-7-2570(3) (providing the court must consider "[t]he distance of the child's placement from the parent's home"). Mother's mother, Kimberly Kocak, testified DBT required weekly individual and group therapy. Based on the distance between Florida and South Carolina, the severity of Mother's mental health condition, and Mother's need for therapy—which was critical for her to visit Child—we find her failure to visit in-person while she attended DBT was not willful.

Further, evidence showed Mother was denied visitation. *See* § 63-7-2570(3) ("[I]t must be shown that the parent was not prevented from visiting by the party having custody or by court order."). Brittney testified it was important for Mother to submit to drug tests and attend weekly borderline personality disorder therapy, and she stated Mother visited in August 2016 after Respondents received a drug screen and therapy records. Luke stated Brittney texted Mother in March 2016 about Child's dance recital and asked her to "take [her] drug test[] so [they could] arrange for [her] to come up and attend." Luke admitted he did not allow visitation

between November 2016 and February 2017 despite Mother's request because he did not have drug test results.  He received a drug test in August 2017, and Mother visited the following month.  Overall, the evidence showed Mother was not permitted to visit Child at various times because she did not submit to a drug screen.  We disagree with Respondents' assertion in their amended complaint that Mother's failure to comply with the terms of the 2015 order made her failure to visit willful.  Mother testified she worked two or three jobs in 2016 and had very little money after she paid her bills.  Luke acknowledged Mother's bank records indicated there were "some months where it didn't seem like she had as much of an income as others."  Based on Luke's testimony that the drug test cost around $400 and Mother said she could not afford it, we find Respondents did not prove Mother willfully failed to comply with the drug test requirement.  Because the evidence showed Mother was denied visitation for not complying with that provision, her failure to visit during that time was not willful.  Respondents were held in contempt of court in December 2017 for not allowing visitation after learning Mother was not attending therapy for borderline personality disorder, and they acknowledged Mother consistently visited after the contempt order.[1]  Thus, this ground is not met.

We also find the family court erred in discounting the FaceTime calls.  In determining whether a parent has willfully failed to visit, our courts have considered phone calls and letters during times the parent could not visit.  *See S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 609-11, 582 S.E.2d 419 (2003) (considering the lack of letters and phone calls from a mother who moved to Tennessee when finding she willfully failed to visit); *Leone v. Dilullo*, 294 S.C. 410, 413-14, 365 S.E.2d 39, 41 (Ct. App. 1987) (considering the lack of letters and phone calls from a mother who moved to Connecticut when finding she willfully failed to visit), *overruled on other grounds by Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 536 S.E.2d 372 (2000); S.*C. Dep't of Soc. Servs. v. Smith*, 423 S.C. 60, 83, 814 S.E.2d 148, 160 (2018) (considering an incarcerated father's lack of phone calls and letters when determining he willfully failed to visit); *Charleston Cty. Dep't of Soc. Servs. v. Jackson*, 368 S.C. 87, 93, 627 S.E.2d 765, 769 (Ct. App. 2006) (reversing the family court's finding that an incarcerated father willfully failed to visit when the father "engaged in an exhaustive letter-writing campaign to learn the whereabouts of" his child, began writing DSS when he learned his child was in DSS's custody, and "asked for [his c]hild's address so he could write [him]").  Due to the distance between Mother and Respondents, the FaceTime calls were relevant to the underlying question of whether Mother's failure to visit was

---

[1] Respondents have appealed that order.

willful, and the family court erred in discounting them.[2]  Brittney acknowledged Mother regularly contacted Child through FaceTime between December 2014 and October 2015, and she estimated Mother exercised "maybe 50 to 60 percent" of her weekly FaceTime visits after the 2015 order.  We find Mother's attempt to maintain a relationship with Child through FaceTime during the periods she did not visit shows she did not evince a settled purpose to forego parental duties.  *See Broome*, 307 S.C. at 53, 413 S.E.2d at 839 ("Conduct of the parent which evinces a settled purpose to forego parental duties may fairly be characterized as 'willful' because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent.").  Based on the foregoing, Respondents did not prove this ground for TPR.  Because Respondents did not prove a statutory ground for TPR, we do not need to consider whether TPR is in Child's best interest.

Finally, the family court did not abuse its discretion in denying Mother's pretrial motion to remove the GAL.  *See Stoney*, 422 S.C. 593, 595 n.2, 813 S.E.2d 486, 487 n.2 (2018) (providing a family court's evidentiary or procedural rulings are reviewed using an abuse of discretion standard).  Although Mother did not renew this argument at the final hearing, the issue of whether the family court erred in denying her pretrial motion to remove the GAL is properly before this court.  We find Mother did not set forth an adequate basis in her motion for removing the GAL.  In support, she asserted (1) the GAL was appointed in the 2015 action and may have developed biases or learned "information that would not be available to a newly appointed" GAL; (2) the GAL could be called as a witness due to her role in the prior action, which "would prevent her from being" the GAL in the current action; and (3) Mother did not believe the GAL could be impartial and fair because she "cop[ied] and pasted many statements from her prior reports into her new report."  These assertions do not support a finding that the family court abused its discretion in denying Mother's motion to remove the GAL.  Other than testimony from the final hearing—where Mother did not renew her motion to remove the GAL—Mother has not pointed to anything to show the family court abused its discretion.  Thus, the family court did not abuse its discretion in denying her motion to remove the GAL.

Based on the foregoing, we reverse TPR as to Mother and vacate the portion of the order granting Child's adoption by Respondents.  Due to the passage of time and

---

[2] The question of whether phone calls constitute visitation misses the primary question raised here, which is whether Mother's failure to visit was willful. Attempts to communicate with a child when a parent cannot otherwise visit are always relevant when considering whether the failure to visit was willful.

recognizing that circumstances surrounding the parties may have changed, we remand this case to the family court for an additional hearing within sixty days of this opinion to address the circumstances of all the parties and the best interest of Child. At the hearing, the family court may receive information on the current status of Child and the parties, including an updated GAL report.

**REVERSED IN PART, VACATED IN PART, and REMANDED.**[3]

**LOCKEMY, C.J., and KONDUROS and HILL, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.